```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/18/2019
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
INTERNATIONAL TECHNOLOGIES                                   :
MARKETING, INC.,                                             :
                                                             :
                                                             :
                                                             :
                                          Plaintiff,         :          1:15-cv-2457-GHW
                                                             :
                                                             :          MEMORANDUM OPINION
                           -v -                              :          AND ORDER
                                                             :
VERINT SYSTEMS, LTD.,                                        :
                                                             :
                                          Defendant.         :
------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

## I.     INTRODUCTION

In March of 2015, ITM filed its first complaint against Verint, asserting claims stemming

from Verint's alleged failure to compensate ITM for advice it provided in connection with a

potential acquisition.  Now—nearly four years after ITM's filing of its first complaint, and three

amended complaints later—ITM comes before this Court seeking leave to file a fourth amended

complaint.  The proposed fourth amended complaint seeks to assert claims based on information

that, while publicly available since 2007, ITM claims it just recently discovered.  Verint not only

opposes ITM's request for leave to file a fourth amended complaint, but also asks the Court to

impose sanctions on both ITM and its counsel under Rule 11.  Because ITM has failed to

demonstrate the necessary diligence to satisfy Rule 16(b)'s good cause standard, ITM's motion is

DENIED.  However, because the Court cannot conclude that either ITM or its counsel's conduct

was objectively unreasonable, Verint's motion for Rule 11 sanctions is also DENIED.

## II.    BACKGROUND

The Court presumes familiarity with this case.  The underlying facts, as presented by

plaintiff, are described in a previous order.  *See Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp.

3d 352, 357 (S.D.N.Y. 2016).  Relevant to plaintiff International Technologies Marketing, Inc.'s ("ITM" or "Plaintiff") motion to amend the pleadings are the circumstances surrounding defendant Verint Systems, Ltd.'s ("Verint" or "Defendant") acquisition of Witness Systems ("Witness") in February 2007, *see id.* at 359-360, and its purchase of Suntech, in 2011.  *See id.*

Now—four years after filing its initial complaint, over a year after the close of discovery, and following the dismissal or withdrawal of all claims previously asserted—ITM comes before the Court seeking leave to file a fourth amended complaint.  ITM seeks to assert claims for breach of the implied covenant of good faith and fair dealing, or in the alternative, breach of contract by anticipatory repudiation.  In support of its motion, ITM claims that it "is now in possession of the information permitting an explanation of Verint's actionable behavior" and that this information will allow it "to place its claims in the proper legal framework."  *See* Dkt. No. 182, Ex. A, Declaration of Anthony Schehtman (the "Schehtman Decl.") at ¶ 21.

In his declaration in support of ITM's motion to file a proposed fourth amended complaint (the "PFAC"), Anthony Schehtman, ITM's president, represents that, in May 2017, he obtained e-mails from 2007 (the "2007 Evidence") that support new causes of action against Verint.  *See* Schehtman Decl. at ¶¶ 7, 10; *see also id.* Ex. F.  Schehtman claims that the 2007 Evidence and subsequent investigation by ITM's counsel based on this evidence establishes that Verint entered into an agreement to acquire Witness that made Verint's acquisition of Suntech impossible.  *See* Schehtman Decl. at ¶¶ 11-13.  Specifically, Schehtman contends that, in the fall of 2006, during its acquisition of Witness, Verint entered into a series of agreements that were predicated on Verint's ability to meet strictly defined liquidity goals and other financial obligations.  *See id.* at ¶¶ 12-14; PFAC ¶¶ 69-73.  ITM contends that these agreements "prohibited Verint from taking on any activity outside of their day to day operations that would have any chance to cause a material adverse change in its financial status."  PFAC at ¶ 72.  ITM argues, therefore, that these agreements

rendered the acquisition of Suntech—which was being negotiated at the same time—"all but impossible." *Id.*

Although it alleges that ITM obtained the 2007 Evidence in May of 2017, Schehtman explains that ITM was unable to act on this allegedly newly-acquired information because of a series of challenges with its counsel.  Schehtman Decl. at ¶¶ 15-19.  ITM's represents that its counsel at the time that it received the 2007 Evidence suffered from a severe sleep disorder, which, ITM contends, hampered his ability to effectively litigate and resulted in his eventual withdrawal as counsel in October 2017.  Schehtman Decl. at ¶ 15.  ITM retained another attorney, who withdrew in short order in January of 2018.  *Id.* at ¶ 16.  ITM again found new counsel ("ITM's Counsel") who, after reviewing the 2007 Evidence, "was led to Verint's public filings regarding its 2007 acquisitions of Witness Systems, Inc. and the representations therein."  *Id.* at ¶ 17.  Any previous delay in seeking leave to amend on ITM's part, they claim, was "inadvertent."  *Id.* at ¶ 18.

Verint, for its part, spins a different yarn in its opposition to ITM's motion for leave to amend and in its motion for sanctions.  Verint points to an e-mail that Schehtman sent on May 19, 2008 in which he attached Verint's Form 8-K dated September 10, 2007 ("the 2007 8-K").  *See* Dkt. No. 201, Verint's Memorandum of Law in Opposition to ITM's Motion to Amend ("Verint's Opposition to Amendment") at 10-12; *see also* Dkt. No. 209, Defendant Verint System Ltd.'s Motion for Sanctions and Attorneys' Fees ("Verint's Motion for Sanctions") at 14.  Because the 2007 8-K describes Verint's agreements with Witness that form the basis for the claims that ITM seeks to assert in the PFAC, Verint argues that ITM's representation that it just recently discovered this information is disingenuous.  Accordingly, Verint asks the Court to deny ITM's motion for leave to amend and to impose sanctions under Rule 11.

## III.   PROCEDURAL HISTORY

ITM initiated this suit on March 31, 2015.  Dkt. No. 1.  Defendant filed a motion to dismiss

the complaint on June 25, 2015.  Dkt. No. 18.  The Court gave Plaintiff the opportunity to amend

its complaint in response to the motion, and Plaintiff filed an amended complaint (the "FAC") on

July 17, 2015.  Dkt. No. 27.  The amended complaint stated claims for breach of contract, breach of

implied contract, breach of the implied covenant of good faith and fair dealing, and a claim for

unjust enrichment and quantum meruit.  On January 27, 2016, the Court granted Defendant's

motion and dismissed all of Plaintiff's claims.  Dkt. No. 52.  The Court granted Plaintiff leave to

replead its claim asserting breach of an implied-in-fact contract and its claim asserting breach of

contract based on intentional delay or prevention.  *Id.* at 14, 17.

Plaintiff filed a second amended complaint (the "SAC") on February 29, 2016.  Dkt. No. 62.

The SAC asserted three claims.  It first articulated claims for unjust enrichment and quantum meruit.

Second, the SAC asserted a claim for breach of an implied-in-fact contract.  Finally, the SAC

repleaded a breach of contract claim based on ambiguity in the contract and the purported absence

of an expiration date in the agreement between ITM and Verint; in its opinion and order deciding

Defendant's first motion to dismiss, the Court had expressly denied Plaintiff leave to replead a

breach of contract claim on these grounds.  *See* Dkt. No. 52 at 13-14.  Defendant requested leave to

file a motion to dismiss all claims and a motion for sanctions.  Dkt. No. 69.  After a pre-motion

conference, the Court granted Defendant leave to file those motions.  Dkt. No. 72.  In response to

the Court's granting Defendant leave to file those motions, Plaintiff filed a third amended complaint

(the "TAC"), which abandoned the breach of contract claim based on purported ambiguity in the

contract, but restated claims for unjust enrichment and quantum meruit and breach of an implied-in-

fact contract.  Dkt. No. 73.  Again, Defendant moved to dismiss.  Dkt. No. 77.  The Court granted

Defendant's motion in part and denied it in part.  Dkt. No. 88.  Specifically, the Court dismissed

Plaintiff's claim for breach of an implied-in-fact contract but allowed Plaintiff to pursue its claims

for unjust enrichment.  *Id.*

The Court entered a revised case management plan on December 2, 2016 (the "Case Management Plan"). Dkt. No. 91. The Case Management Plan did not allow further amendments to the complaint. *Id.* On March 5, 2018, the parties notified the Court that there were no outstanding motions, that all discovery had been completed, and that the only remaining deadline was for Verint to move for summary judgment. Dkt. No. 175. At that point, ITM informed the Court that it was preparing a pre-motion letter, seeking "the proposed conformation [sic] of the pleadings to the evidence." *Id.* One week later, ITM filed a pre-motion letter seeking leave to file a motion to submit an amended complaint. Dkt. No. 176. The Court granted ITM's request, Dkt. No. 178, and ITM filed a motion seeking leave to file the PFAC on April 9, 2018, Dkt. No. 181. Verint filed a motion opposing ITM's motion for leave to file an amended complaint on May 21, 2018, Dkt. No. 201, and ITM replied two weeks later. Dkt. No. 214.

Verint filed a motion for sanctions under Rule 11 on May 21, 2018, Dkt. No. 207.[1] ITM filed an opposition to Verint's motion on July 2, 2018, Dkt. No. 227, and Verint filed its reply on July 23, 2018, Dkt. No. 237.

## IV.    DISCUSSION

### A.   ITM's Motion for Leave to Amend is Denied

ITM seeks leave to file a fourth amended complaint. Because the Court cannot conclude that ITM has demonstrated the diligence necessary to satisfy Rule 16(b)'s good cause standard, ITM's motion is denied.

### i.    *Legal Standard*

Under Rule 15 of the Federal Rules of Civil Procedure, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15

---

[1] Verint mailed ITM a safe harbor letter setting forth the grounds for its anticipated motion for sanctions under Rule 11 on April 20, 2018. *See* Dkt. No. 208, Ex. I.

further directs the Court to "freely give leave when justice so requires." *Id.* But, "[w]here, as here, a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009) (internal citation and quotation marks omitted); *see* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see also Semple v. Eyeblaster, Inc.*, No. 08–9004, 2009 WL 1748062, at *2 (S.D.N.Y. June 19, 2009) (finding that Rule 16(b) governs an application to amend the pleading once a scheduling order has been issued). "Whether good cause exists turns on the diligence of the moving party." *Holmes*, 568 F.3d at 335 (internal quotation marks omitted). The party moving to amend bears the burden of demonstrating good cause. *See, e.g., Tchatat v. O'Hara*, No. 14 CIV. 2385 (LGS), 2017 WL 3172715, at *8 (S.D.N.Y. July 25, 2017); *Semple*, 2009 WL 1748062, at *2. "Specifically, the moving party must demonstrate that it has been diligent in its efforts to meet the Court's deadlines, and that despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Lee v. Kylin Management LLC*, No. 17-CV-7249 (JMF), 2019 WL 917097, at *1 (S.D.N.Y. Feb. 25, 2019) (internal citation and quotation marks omitted). A party cannot make that showing "when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Id; see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340-41 (2d Cir. 2000) (affirming the denial of a motion to amend because the plaintiff had the information necessary to support his new claim when filing an earlier complaint); *McBeth v. Porges*, No. 15-CV-2742 (JMF), 2018 WL 5997918, at *2 (S.D.N.Y. Nov. 15, 2018).

   ii.   *Diligence*

The Court concludes that ITM has not met its burden of demonstrating the diligence required to satisfy Rule 16(b)'s good cause standard. As explained above, when determining

whether a party has satisfied Rule 16(b)'s good cause standard, the key inquiry is diligence. *Lee*, 2019 WL 917097, at *1. Here, the thrust of ITM's motion for leave to file a fourth amended complaint derives from information it allegedly recently uncovered revealing that Verint had entered into agreements with Witness that made its acquisition of Suntech impossible. However, the declaration Schehtman offers in support of ITM's PFAC does not permit the Court to find that ITM acted diligently. With respect to the 2007 Evidence and the alleged discovery of Verint's agreements with Witness, Schehtman explains:

> After a review of the 2007 Evidence by new counsel, ITM was unable to find any documentation produced by Verint relating to the actual Witness acquisition of 2007. We therefore begin [sic] a review of public filings relating to that acquisition and discovered that numerous terms of the relevant agreements relied on a period of financial stasis for Verint that predated [the deal ITM and Verint entered into to govern Verint's acquisition of Suntech].

Schehtman Decl. at ¶ 11.

A party is not diligent where the information motivating the request to file an amended complaint was previously available to the public. *See Separzadeh v. Iconix Brand Grp., Inc.*, No. 15-CIV-8643 (AT) (JCF), 2016 WL 6126386, at *2 (S.D.N.Y. Oct. 19, 2016) ("A party is not diligent when information that was previously publicly available would have been a sufficient basis for amendment."); *De Malmanche v. Glenrock Asset Mgmt. Assocs. L.P.*, No. 07 Civ. 10940, 2011 WL 990165, at *5 (S.D.N.Y. March 16, 2011) (finding no good cause where information inspiring amendment was available online in FSA Register, and "a simple due diligence inquiry" would have disclosed it). Here, because Schehtman concedes that the information about Verint's "financial stasis" was available in public filings, the Court concludes that ITM has failed to meet its burden of demonstrating that it acted diligently.

The considerable gap between ITM's discovery of the 2007 Evidence and its motion to file the PFAC also prevents it from demonstrating the diligence required to satisfy Rule 16(b)'s good

cause standard. Judges in this district have found that parties could not demonstrate diligence when they, after discovering new information, filed a Rule 16(b) motion to amend much more promptly than ITM has here. *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 201-02 (upholding denial of leave to amend where "Plaintiffs became aware of the need to consider a possible [additional] claim . . . more than seven months before moving to amend their complaint"); *Tardif v. City of New York*, No. 13-CV-4056 (KMW) (FM), 2016 WL 2343861, at *5 (S.D.N.Y. May 3, 2016) (finding that plaintiff's five-month gap between discovering new information and seeking leave to amend precluded her from demonstrating the diligence necessary to satisfy Rule 16(b)'s good cause standard); *Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) (noting that district court "acted well within its discretion" in concluding that plaintiff's three-month failure to move for amendment after learning of information that formed the basis of the proposed amendment prevented plaintiff from demonstrating the diligence necessary to satisfy Rule 16(b)).

In his declaration, Schechtman describes ITM's delay in asserting its new claims as "inadvertent" and attributes it to difficulty ITM encountered with the two previous lawyers that it retained. To the extent that ITM presents these issues to allow the Court to find good cause to support its motion under Rule 16(b), this effort fails. ITM's issues with its counsel does not satisfy Rule 16(b)'s good cause standard. *See, e.g.*, *Scott v. New York City Dep't of Corr.*, 445 F. App'x 389, 391 (2d Cir. 2011) (affirming denial of motion to amend scheduling order because "apparent negligence of [plaintiff's] former attorney was not sufficient to establish 'good cause' for amending" under Rule 16(b)); *Field Day, LLC v. County of Suffolk*, No. 04 CV 2202 (DRH) (ETB), 2013 WL 55697, *3 (E.D.N.Y. Jan. 3, 2013) ("[T]he fact that new counsel seeks to plead claims that prior counsel passed on does not establish good cause")). The Court does not limit its diligence assessment to ITM's current counsel. ITM has been represented by several firms and numerous counsel in this case: its retention of new counsel does not provide it with the opportunity to restart this litigation. Because

the information forming the basis for ITM's PFAC was previously available to the public and could have been discovered through due diligence and, furthermore, because ITM learned of this information and lollygagged for eleven months thereafter before seeking leave to amend under Rule 16(b), the Court concludes that it has failed to show that it acted with the diligence necessary to satisfy Rule 16(b)'s good cause standard.

   iii.   *Prejudice*

While the Court has determined that ITM did not act with the diligence required to satisfy Rule 16(b)'s good cause standard, it nonetheless considers whether the proposed amendment would result in undue prejudice to Verint.  *See Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 244 (2d Cir. 2007) ("The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."); *cf. Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05 CV 3749 KMW DCF, 2009 WL 3467756, at *5 (S.D.N.Y. Oct. 28, 2009) ("The standards of Rule 16(b) must be met first and cannot 'be short-circuited by an appeal to those of Rule 15.'") (quoting *Nairobi Holding Ltd. v. Brown Brothers Harriman & Co.*, No. 02–1230, 2006 WL 2242596, at *3 (S.D.N.Y. Aug. 3, 2006)).

"In determining what constitutes 'prejudice' [courts] consider whether the assertion of a new claim would:  (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  In support of its motion to amend, ITM argues that the additional discovery associated with the new claims that it seeks to allege will be limited.  Dkt. No. 183, Plaintiff's Brief in Support of Motion to Amend ("Plaintiff's Brief"), at 6; *see also* Schehtman Decl. ¶ 21.  ITM further represents that its "proposed claims concern the same time period, and

9

substantially the same facts, as prior complaints."  Plaintiff's Brief at 5.   The Court disagrees.

In its four previous complaints, ITM sought relief for Verint's alleged breach of their agreement governing Verint's potential acquisition of Suntech.  Over the now nearly four years since ITM filed its initial complaint, its theories of recovery have shifted—encompassing relief sounding in both law and equity and asserting claims for breach of both actual and implied contract.  However, the proposed amendment ITM now brings before the Court—premised on Verint's entry into agreements with Witness—represents a shift in focus from previous complaints that would require additional discovery into material not previously germane to the case.  ITM claims that "the additional discovery likely to be necessary is minimal" and "anticipates the need for disclosure of only a small, clearly defined class of documents, (i) those sufficient to demonstrate Verint's obligations to, and (ii) communications with, the third parties providing financing for Verint's acquisition of Witness."  Plaintiff's Brief at 5-6.

Applying *Block*'s factors, the Court concludes that permitting ITM to file still another complaint would unduly prejudice Verint.  Fact discovery in this case closed on December 1, 2017.  As the Court previously observed, it has afforded ITM "an extremely extended period of time in which to conduct discovery."  Dkt. No. 179, 62:19-21.  Allowing ITM to re-open discovery to investigate events that occurred and request documents that were produced over twelve years ago would likely require Verint to expend significant resources.  Furthermore, as mentioned above, this case has been proceeding for nearly four years.  Allowing ITM to file a *fifth* complaint that would require the re-opening of discovery would certainly result in a significant delay in the resolution of this dispute.  Accordingly, the Court finds that Verint would be unduly prejudiced if ITM were permitted to file its PFAC.

      *iv.*    *Futility*

The Court also addresses the viability of the claims asserted in the PFAC.  *See Ramsay-Nobles*

*v. Keyser*, No. 16 CIV. 5778 (CM), 2018 WL 6985228, at *7 (S.D.N.Y. Dec. 18, 2018) (explaining that

a court can consider the factors relevant under Rule 15(a)—including futility—even if the moving

party fails to establish good cause under Rule 16(b)).  Even if the Court granted ITM leave to

amend, substantial questions exist as to whether the two claims that ITM seeks to allege in the

PFAC would be futile given the applicable statute of limitations.  Both breach of the implied

covenant of good faith and fair dealing and breach of contract through anticipatory repudiation have

statutes of limitations of six years under New York law.  *See Callahan v. Credit Suisse, Inc.,* 10 Civ.

4599(BSJ), 2011 WL 4001001, at *7 (S.D.N.Y. Aug. 18, 2011) (statute of limitations on a claim for

breach of the implied covenant of good faith and fair dealing is six years); *QK Healthcare, Inc. v.

InSource, Inc.*, 108 A.D.3d 56, 62 (2013) (statute of limitations for claim asserting anticipatory

repudiation of a contract is six years under New York law).  It is not apparent on the face of the

PFAC why the statute of limitations does not bar the claims that ITM requests leave to assert, which

seek to impose liability based on an agreement that expired on February 21, 2007.

### B.  Verint's Motion for Rule 11 Sanctions is Denied

In its motion to impose sanctions on ITM and its counsel, Verint identifies actions

purportedly warranting the imposition of sanctions under Rule 11.  The Court addresses each below.

Given the Second Circuit's instruction "to grant Rule 11 sanctions sparingly" and, further, to

"resolve all doubts in favor of the party against whom sanctions are sought," Verint's motion for

sanctions is denied.  *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993).

#### i.  *Legal Standard*

Under Federal Rule of Civil Procedure 11(b), an attorney who presents a pleading to a court

"certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry

reasonable under the circumstances" that the pleading (1) "is not being presented for any improper

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" (2)

contains "claims, defenses, and other legal contentions" that are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" and (3) contains factual contentions that "have evidentiary support." Fed. R. Civ. Proc. 11 (b)(1)-(3).  Rule 11 "imposes an 'affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading' before actually signing it." *Hoatson v. N. Y. Archdiocese,* No. 05-cv-10467 (PAC), 2007 WL 431098, at *9 (S.D.N.Y. Feb. 8, 2007) (quoting *O'Malley v. N.Y.C. Transit Auth.,*896 F.2d 704, 706 (2d Cir. 1990)).  "[S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Constr. Corp. v. New York City*, 762 F.2d 243, 254 (2d Cir. 1985) (footnote omitted).  "In determining whether an argument is merely losing or whether it is 'merely losing and sanctionable,' a court must resolve all doubts in favor of the signer." *Lipiro v. Remee Prods.,* 75 F. Supp. 2d 174, 178 (S.D.N.Y. 1999).  Because "courts may issue sanctions only in extraordinary circumstances," *Simpson v. Wells Fargo Bank*, No. 15-cv-1487 (JMF), 2016 WL 10570967, at *4 (S.D.N.Y. Dec. 15, 2016), the Second Circuit has instructed district courts to grant Rule 11 sanctions sparingly and "'resolve all doubts in favor of' the party against whom sanctions are sought." *GemShares, LLC v. Kinney*, 2017 WL 1092051, at *1 (S.D.N.Y. Mar. 15, 2017) (quoting *Rodick*, 1 F.3d at 1350).

### *ii.  Assertions of Allegedly Clearly Time-Barred Claims*

As explained above, in the PFAC, ITM seeks leave to assert claims for breach of good faith and fair dealing and anticipatory repudiation.  PFAC at 19-21.  The statute of limitations for both of those claims is six years.  *See V.E.C. Corp. of Delaware v. Hilliard*, 896 F. Supp. 2d 253, 260 (S.D.N.Y. 2012) (statute of limitations for breach of covenant of good faith and fair dealing is six years); *QK*

*Healthcare, Inc.*, 108 A.D.3d at 62, 65 (the statute of limitations for claim of anticipatory repudiation is six years). Because the Court previously held that the agreement between ITM and Verint expired on February 21, 2007, Verint argues that ITM has contravened Rule 11(b)(2) by advancing claims barred by the statute of limitations. *See* Verint's Motion for Sanctions at 13; *see also Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281, 1288 (2d Cir. 1986) (remanding to district court for sanctions when it was patently clear that the claims were time barred and no competent attorney could have determined that claims were justified by existing law or nonfrivolous arguments); *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 122-23 (S.D.N.Y. Jan. 24, 2003) (sanctioning plaintiff's counsel as to claims that were clearly time-barred).

In its opposition to Verint's motion for sanctions, ITM argues that the claims it seeks to assert in the PFAC are not barred as a matter of law. In broad strokes, ITM appears to argue that Verint's entry into agreements with Witness constituted an anticipatory breach of its agreement with ITM. *See* Dkt. No. 227, Memorandum of Law in Opposition to Defendant Verint System Ltd.'s Rule 11 Motion for Sanction's and Attorney's Fees ("ITM's Opposition"), at 8-12. This anticipatory breach, ITM contends, both "excused" the February 21, 2007 expiration of their agreement and extended its time to commence suit until the time of performance—which ITM claims occurred in February 2011 when Verint acquired Suntech. Accordingly, ITM posits that, contrary to Verint's position, the claims in the PFAC are not untimely as a matter of law.

While the Court does not take up the merits of ITM's argument, it acknowledges that substantial precedent exists that calls its viability into question. *See, e.g.*, *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mort. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016); *Rachmani Corp. v. 9 E. 96th Street Apt. Corp.*, 211 A.D. 262, 267 (1st Dep't 1995). Nevertheless, "in addressing a Rule 11 motion, a court must distinguish between losing arguments and arguments that are losing and sanctionable." *Sec. Indus. Ass'n v. Clark*, 898 F.2d 318, 321 (2d Cir. 1990). Here, even assuming for the sake of

argument, that ITM presents a losing argument, the Court cannot conclude that it is so frivolous as a matter of law as to justify sanctions. *See, e.g., Okoampa-Ahoofe v. Johnson & Higgins*, No. 99 CIV. 5820 (AGS), 2000 WL 1471552, at *6 (S.D.N.Y. Sept. 29, 2000) (declining to impose Rule 11 sanctions where, in opposition briefing to adversary's motion for sanctions, attorney articulated unavailing, but not objectively unreasonable argument as to why the statute of limitations did not bar claims); *see also Colliton v. Morgan*, No. 07 Civ. 8269 (LTS) (THK), 2009 WL 874043, at *2 (S.D.N.Y. Mar. 31, 2009) (declining to impose sanctions where party argued losing, but not untenable argument). Therefore, the Court declines Verint's invitation to impose sanctions on ITM and its current counsel on these grounds.

> iii.    *Repleading of Claim Previously Dismissed Without Leave to Replead*

Verint next asks the Court to impose sanctions under Rule 11(b)(2) because it alleges that ITM's PFAC seeks to assert a claim that the Court previously dismissed without granting leave to replead. *See* Verint's Motion for Sanctions at 13. In its initial complaint, ITM asserted a claim for breach of the covenant of good faith and fair dealing. *See* Dkt. No. 1 at 17-19. ITM alleged two theories in support of this claim. First, ITM argued that Verint's delay—or the motivation for its delay—in acquiring Suntech constituted a breach. Second, ITM claimed that Verint breached by failing to include it in negotiations it had with Suntech in 2011. In its decision on Verint's motion to dismiss the initial complaint, the Court dismissed this claim and denied ITM leave to replead. The Court denied leave to replead because it found that amendment would be futile. *See* Dkt. No. 52 at 22. The Court reached that conclusion for two reasons. First, the Court found that amendment would be futile because the allegations ITM presented in support of this claim mirrored those it asserted in its breach of contract claim. *Id.* at 21; *see ARI & Co. v. Regent Int'l Corp..*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003) ("[a]ny freestanding claim for a breach of the covenant of good faith and fair dealing, based on the same allegations [as a breach of contract claim] are redundant and must . . .

be dismissed."). Second, the Court did not grant ITM leave to replead this claim because any cause of action based on the 2011 negotiations between Verint and Suntech occurred after the expiration of the agreement between ITM and Verint and "plaintiff has no cognizable claim for the breach of an implied obligation arising from an expired contract." Dkt. No. 52 at 22 (citing *Keefe v. New York Law Sch.*, 897 N.Y.S.2d 94, 95 (App. Div. 2010)).

While, again, the Court does not reach the merits of the claim for the breach of implied covenant of good faith and fair dealing that ITM asserts in the PFAC, the Court observes that it is premised on facts distinct from the claim that was previously dismissed without leave to replead. In the PFAC, ITM's claim for the breach of the implied covenant of good faith and fair dealing hinges on allegations not seen in previous complaints—namely that Verint's entry into agreements with Witness rendered itself unable to timely acquire Suntech before it entered into its agreement with ITM. The Court, therefore, does not find a basis to impose sanctions on ITM or its counsel here.

    *iv.*    *Basing a Proposed Amended Complaint on False Factual Contentions*

As its final argument for imposing sanctions, Verint contends that ITM violated Rule 11(b)(3) by submitting papers with factual allegations that lack evidentiary support and contentions that ITM allegedly knows to be false. Verint's Motion for Sanctions at 14. As explained above in the Court's discussion of ITM's motion for leave to file an amended complaint, ITM contends that newly-discovered information encountered only after receiving the 2007 Evidence animated the claims asserted in the PFAC. Verint argues that this is a sanctionable misrepresentation because Schehtman e-mailed the 2007 8-K to Suntech employees and, furthermore, because the 2007 8-K contains information about the Witness acquisition's effect on Verint's ability to merge with or acquire other companies. *See* Verint Motion for Sanctions at 15-16. Verint also argues that ITM has previously pled and argued that Verint's deal with Witness delayed its Acquisition of Suntech. ITM's arguments in its previous pleadings, Verint contends, undermine its representation that newly-

discovered information inspired the PFAC.

ITM counters by pointing the Court to the subject line of the e-mail, which reads, "More, Verint banned for Corruption by USA FEDERAL Authorities." *See* Dkt. No. 208, Ex. 2. ITM claims that Schehtman's purpose in sending the 2007 8-K was to raise awareness of investigations into Verint's misconduct and denies Verint's argument that this e-mail proves that ITM had actual knowledge of Verint's agreements with Witness. ITM's Opposition at 6. ITM also rejects Verint's argument that its previous complaints undermine its claim that the PFAC is premised on newly-discovered information. ITM's Opposition at 6-7. While ITM acknowledges that it previously alleged that Verint's interest in acquiring Witness delayed its acquisition of Suntech, it argues that these claims are legally and factually distinct from the argument it articulates in the PFAC—that Verint's agreements with Witness constituted a repudiation of its agreement with ITM.

Again, the Court declines to impose sanctions on these grounds. To be sure, the 2007 8-K describes Verint's acquisition of Witness and the concomitant effect on its ability to acquire other companies. *See* Dkt. No. 208, Ex. B at 12-13. Still, however, the e-mail that Schehtman sent attaching the 2007 8-K is devoid of any mention of this information. And while the availability of this information to the public is enough for the Court to conclude that ITM did not act with the diligence to satisfy Rule 16(b)'s good cause standard, when deciding whether to impose sanctions on ITM, the Court must resolve all doubts in its favor. What's more, the Court does not find that ITM's allegations against Verint in its previous complaints undermine Verint's claim that the PFAC is based on new information so as to warrant sanctions under Rule 11(b)(3). Here too, the Court declines to impose sanctions.

The Court can understand Defendant's frustration with regard to this litigation generally and, in particular, Plaintiff's conduct prior to its retention of the current set of counsel. However, the Court views the behavior of ITM's current attorneys to date as zealous advocacy on behalf of

their client's interests that does not so exceed the bounds of reasonableness as to warrant the imposition of sanctions.

## V.      CONCLUSION

For the reasons herein stated, ITM's motion for leave to file a fourth amended complaint is DENIED.  Verint's motion for sanctions under Rule 11 is also DENIED.  ITM's motion to withdraw its claim for unjust enrichment is GRANTED.  Because ITM has withdrawn its unjust enrichment claim, all claims in this matter have been resolved.

The Clerk of Court is directed to enter judgment in favor of Defendant and to terminate the motions pending at Dkt. Nos. 181 and 207.

SO ORDERED.

Dated:  March 15, 2019
        New York, New York

_____
GREGORY H. WOODS
United States District Judge