USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/18/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                           :

INTERNATIONAL TECHNOLOGIES     :
MARKETING, INC.,                          :
                           :
                           :
                   Plaintiff,   :            1:15-cv-2457-GHW
                           :        MEMORANDUM OPINION
            -v -              :          AND ORDER
                           :

VERINT SYSTEMS, LTD.,          :
                           :
                   Defendant.   :

-------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

In April of 2016, Defendant asked the Court to impose sanctions under Rule 11 on Plaintiff and its then counsel of record. The Court denied that motion without prejudice because, at the time, it did not have sufficient information to determine whether such sanctions were warranted. Now, equipped with documents and deposition testimony obtained through discovery, Defendant not only moves to renew its previous motion for sanctions, but also asks the Court to impose sanctions under its inherent authority as a result of Plaintiff and its CEO's alleged fraud on the court. For the reasons set forth below, the Court denies Defendant's motion asking the Court to impose sanctions on Plaintiff pursuant to its inherent authority for alleged fraud on the court. However, Defendant is granted leave to renew its previously-submitted motion for sanctions under Rule 11, and that motion is granted in part.

## II.    BACKGROUND

The Court presumes the reader's familiarity with this case's history. The facts, as presented by plaintiff, are described in a previous order, *see Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 357 (S.D.N.Y. 2016), and also laid out by the Court in a separate opinion in this

case issued today.  Accordingly, the description below recounts facts relevant to the motion currently before the Court.

A.  Procedural History

For nearly four years, plaintiff International Technologies Marketing, Inc. ("ITM" or "Plaintiff") has been pursuing defendant Verint Systems, Ltd. ("Verint" or "Defendant") for allegedly failing to compensate ITM for advising services it provided between 2006 and 2007 in connection with a potential acquisition.  *See Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 357 (S.D.N.Y. 2016).

ITM filed its initial complaint on March 31, 2015, asserting claims of breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment.  Dkt. No. 1.  With respect to the unjust enrichment claim, Plaintiff alleged that it incurred $350,000 in costs while promoting Verint's entry into the Brazilian business and government markets, principally through the acquisition of Suntech.  *Id.* at 19.  Defendant filed a motion to dismiss the complaint on June 25, 2015.  Dkt. No. 18.  The Court gave Plaintiff the opportunity to amend its complaint in response to the motion, and Plaintiff filed an amended complaint (the "FAC") on July 17, 2015.  Dkt. No. 27.  The FAC asserted claims of breach of contract, breach of the covenant of good faith and fair dealing, breach of an implied-in-fact contract, and again restated a claim for unjust enrichment or quantum meruit.  Dkt. No. 27 at 18-23.  Defendant again moved to dismiss, Dkt. No. 39.  The Court granted Defendant's motion and dismissed all of the claims Plaintiff asserted in the FAC.  Dkt. No. 52.  With respect to the unjust enrichment claim, the Court held that Plaintiff could not recover under a quasi-contractual theory for the same damages that it sought under the contract, which, the Court found, expired on February 21, 2007.  Dkt. No. 52 at 7.  The Court granted Plaintiff leave to replead its unjust enrichment or quantum meruit claim to the extent that it sought to allege a claim based on its efforts *after* the expiration of the contractual term.  *Id.* at 24.

Plaintiff filed a second amended complaint (the "SAC") on February 29, 2016. Dkt. No. 62. The SAC asserted three claims. It first articulated claims for unjust enrichment and quantum meruit. Second, the SAC asserted a claim for breach of an implied-in-fact contract. Finally, the SAC repleaded a breach of contract claim based on ambiguity in the contract and the purported absence of an expiration date in the agreement between ITM and Verint; in its opinion and order deciding Defendant's first motion to dismiss, the Court had expressly denied Plaintiff leave to replead a breach of contract claim on these grounds. *See* Dkt. No. 52 at 13-14. Defendant requested leave to file a motion to dismiss all claims and a motion for sanctions. Dkt. No. 69. After a pre-motion conference, the Court granted Defendant leave to file its proposed motion. Dkt. No. 72. In response to the Court's granting Defendant leave to file those motions, Plaintiff filed a third amended complaint, which abandoned the breach of contract claim based on purported ambiguity in the contract, but restated claims for breach of an implied-in-fact contract and unjust enrichment or quantum meruit. Dkt. No. 73, ITM's Third Amended Complaint, (the "TAC"). Again, in asserting its quantum meruit claim for damages arising after the termination of the parties' contract, Plaintiff contended that it had incurred $350,000 in expenses on Verint's behalf—the exact amount that Plaintiff had claimed for the period preceding the expiration of the contract. *See* TAC at ¶¶ 86-87.

B. The Motion to Dismiss and Rule 11 Motion

On April 15, 2016, Defendant moved to dismiss the TAC, Dkt. No. 77, and, again, moved for sanctions. Motion for Sanctions (the "Rule 11 Motion"), Dkt. No. 80. The Rule 11 Motion asked the Court to sanction Plaintiff in connection with its filing of the TAC. Dkt. No. 80. In the Rule 11 Motion, Defendant argued that the two claims Plaintiff asserted in the TAC—claims of quantum meruit and breach of an implied-in-fact contract—were unfounded. *See* Dkt. No. 82 at 9-14. In particular, Defendant observed that the quantum meruit claim Plaintiff asserted in the TAC again sought $350,000 for services rendered on Verint's behalf *after* the expiration of the contract,

while the quantum meruit claims asserted in the FAC and SAC sought the same amount in damages

for efforts undertaken both *before and after* 2007. Dkt. No. 82 at 11-12.

The Court held a pre-motion conference on Defendant's motion to dismiss and the Rule 11

Motion on November 16, 2016. Dkt. No. 87. During that conference, the Court asked Plaintiff

about the nature of the damages it sought with the quantum meruit claim:

> The Court: I think there's a separate issue on the $350,000 regarding
> the plausibility, and its your Rule 11 obligations. I take it, because
> you've signed the complaint, that there is evidentiary support for your
> pleading that the $350,000 were expended after 2007, not before 2007
> and after 2007; is that correct?

*Id.* at 6:1-7. Christopher S. Hinton, then counsel for Plaintiff, responded, "[c]orrect your honor." *Id.*

The Court dismissed Plaintiff's claim for breach of an implied-in-fact contract, but allowed Plaintiff

to pursue its quantum meruit claim. *See* Dkt. No. 88. In reaching this decision, the Court explained:

> The TAC adequately alleges the elements of a claim for unjust
> enrichment for the period following the expiration of the written
> contract . . . . The Court does find it curious that the amount of costs
> and expenses that plaintiff claims for the period following February
> 2007—$350,000—is the same amount as it claimed under the first
> amended complaint for a more extended period, but I must accept the
> allegations in the TAC as true for these purposes.

Dkt. No. 92 at 9:19-10:6. The Court denied Defendant's Rule 11 Motion because it did "not have

sufficient information at [the] time to conclude that counsel ha[d] violated his Rule 11 obligations."

*Id.* at 12:12-14.

C. Discovery

After the Court's decision on the motion to dismiss, the parties engaged in discovery with

respect to the only remaining claim—Plaintiff's quantum meruit claim for the post-contractual

period. Discovery was contentious. Defendant alleges that ITM engaged in misconduct by delaying

document production and preparing and forcing Verint to review letters rogatory that were never

used. Dkt. No. 221, Memorandum of Law in Support of Motion to Renew and Motion for

Sanctions ("Verint's Memorandum of Law"), at 27-28. All in all, ITM required eight extensions to complete its production. *Id.* Verint also alleges foul play on the part of Anthony Schehtman, ITM's president and CEO. Defendant contends that Mr. Schehtman represented that a neurological injury prevented him from traveling to New York for his deposition at the same time that he travelled to Israel to meet with potential witnesses for this case. Verint's Memorandum of Law at 23. During a conference call in October 2017, counsel for Defendant and Mr. Hinton discussed the difficulty and delay in scheduling Mr. Schehtman's deposition. *See* Dkt. No. 220, Declaration of Howard I. Elman in Support of Verint's Motion to Renew and Motion for Sanctions (the "Elman Decl."), ¶ 5. During this call, Mr. Hinton confirmed that Mr. Schehtman had traveled to Israel. *Id.* Two days after this call, Mr. Hinton moved to withdraw as counsel for ITM. Dkt. No. 126. Stuart L. Melnick entered an appearance as counsel for ITM on November 21, 2017. Dkt. No. 134. While Defendant first served deposition notices on Mr. Schehtman on January 13, 2017, Dkt. No. 124, he was not deposed until January 18, 2018.

Defendant contends that documents and testimony uncovered through discovery—in particular, Mr. Schehtman's deposition testimony—reveal that he and ITM "lied repeatedly about central issues in this case" such that the Court should impose sanctions under its inherent authority for fraud on the Court and allow Defendant to renew its Rule 11 Motion. Because Defendant's support for its motion relies substantially on Mr. Schehtman's deposition testimony, the Court sketches its contours below.

### D. Mr. Schehtman's Deposition

To say that Mr. Schehtman's deposition testimony contradicts many of the factual predicates upon which the TAC's quantum meruit claim is based would be an understatement. His testimony, along with the documents produced in discovery belies the representations ITM and Mr. Hinton made in submitting the TAC's quantum meruit to the Court and that Mr. Hinton made in defending

the claim against Defendant's motion to dismiss.

i. *Services ITM Allegedly Provided to Verint*

In the TAC, ITM alleged that, "in connection with the Suntech Acquisition process" it "regularly communicated with Verint's major equity stakeholders and former high-level executives and with "several parties" that ITM "reasonably believed to be "working with Verint." (the "Proxies"). TAC ¶¶ 70, 71; *see also* Dkt. No. 83 at 8-10 (citing, to oppose Defendant's motion to dismiss the quantum meruit claim, ITM's contact with Proxies as evidence that it had a reasonable belief that it was acting in Verint's interest). However, during his deposition, Mr. Schehtman stated that nobody who worked for Verint represented to ITM that it should continue working towards the Suntech acquisition. Elman Decl., Ex. 4 at 356:14-19. What's more, Mr. Schehtman testified that he did not communicate with anyone at Verint about the Suntech acquisition after 2007. *Id.* Mr. Schehtman's deposition testimony also undermined ITM's previous representations about the Proxies. While Mr. Schehtman identified three individuals as Proxies, he testified that he did not know whether any of them worked for or had ever worked for Verint. *See* Elman Decl. Ex. 3 at 299:11-302:2, 304:19-307:7, 74:12-75:4.

Mr. Schehtman's deposition testimony and documents produced in discovery also undermine ITM's representation that it provided "hundreds of hours of services by persons highly experienced in Brazilian business and government" at "Verint's request and with Verint's personal knowledge and acquiescence." TAC ¶ 86. Mr. Schehtman testified that he was in talks with one of Verint's competitors about acquiring Suntech both during the contractual period and after. *See* Elman Decl. Exs. 8, 9; *see also* Verint's Memorandum of Law at 11. The following exchange from his deposition is illustrative of Mr. Schehtman's attitude toward assisting Verint's competitors:

> Q. In your view, Verint losing out on opportunities in Brazil, would
> have been a positive for you because that would in your mind be a
> catalyst for Verint to want to acquire Suntech?
> A. Not only is that correct, but it's actually the reason we first started

with Verint in the very beginning, was based on the federal police
disaster on the border town.  Exactly for not working with Verint - -
with Suntech and Digitro, so that's 100 percent correct, yes.
Q.  Right, so one of your techniques in helping Verint acquire
Suntech, you do understand that that technique could cause short-
term damage to Verint, right, losing out business opportunities to
competitors?
A.  Absolutely.  In fact, the usual strategy is to show if you don't
keep—if you keep up the strategy, you will happen—it will happen
again.  It could happen again.  Absolutely, yes.
Q.  Did you ever tell anybody at Verint that you thought it was a good idea to help
other companies compete with it so that it would ultimately acquire Suntech?
A.  No.  I don't think it's necessary, and it wasn't part of my engagement contract to
do so.  My engagement contract was to facilitate an acquisition by whatever legal
means I can.
Q.  Okay.  Do you believe that helping competitors of Verint compete with Verint
was using your best commercial efforts to assist Verint in acquiring Suntech?
A.  Yes.  Absolutely, long-term interest with the company, and in fact, it transpired in
the end, as predicted.

Elman Decl. Ex. 4 at 375:9-376:22.  This excerpt, however, is just one example of Mr. Schehtman's

multiple concessions that he worked against Verint's interests.  *See, e.g.,* Elman Decl. Ex. 3 at 77:17-

21 (Mr. Schehtman explaining that he told a "competitor of Verint that it should target Verint's

installations"); Elman Decl. Ex. 3 at 77:22-25 (Mr. Schehtman acknowledging that he actively

worked to prevent a Brazilian governmental agency from purchasing Verint's products); *cf.* TAC at

¶ 86 (alleging that ITM conferred an indirect benefit on Verint in the form of allowing it to enter the

Brazilian business and government security-related market).

Mr. Schehtman's deposition testimony also suggests that he undertook actions with the

intent to harm Verint, despite pleading that ITM "proceed[ed] in good faith [and] continued to

expend its best efforts to effectuate the goal of" having Verint acquire Suntech during the post-

contractual period.  TAC at ¶ 67.  Mr. Schehtman stated that he considered himself free to help

competitors of Verint acquire Suntech during the time period during which ITM was allegedly

working on Verint's behalf to achieve this goal.  Elman Decl. Ex. 4 at 225:2-5.  In his words, he

intended to give Verint a "bloody nose," *id.* at 389:17, and explained that he treated Verint as the

enemy at certain points in time, *id.* at 394:15-17. In a May 2008 e-mail to Suntech, Mr. Schehtman wrote, "you have now enough dirt on Verint that if we lose any deal to them, we should be ashamed." Elman Decl. Ex. 29. Mr. Schehtman also admitted that it was "very likely" that he told individuals that he believed that Verint lacked integrity. *Id.* Ex. 3 at 77:12-15.

        ii.   *The Expenses ITM Allegedly Incurred on Verint's Behalf*

Mr. Schehtman's deposition similarly undermines ITM's representations that it reasonably expected Verint to compensate it for the $350,000 that it allegedly incurred on Verint's behalf. In the TAC, ITM alleged that, "ITM and Verint agreed and intended that ITM would be paid a reasonable amount for its services." TAC at ¶ 88. However, in an e-mail exchange from June 2007 between Mr. Schehtman and an employee of NATS, ITM's related company, the NATS employee writes, "[d]o you still have a valid contract with [V]erint? Don't you think [sic] strange they don't contact us?" Elman Decl. Ex. 36. Mr. Schehtman replied, "I think Verint consider [sic] that old contract invalid for specific reasons . . .[O]ur compensation for this will come off of the Suntech International contract." *Id.*

Mr. Schehtman's testimony also calls into question ITM's claim that it "incurred expenses amounting to approximately $350,000, in connection with the continued facilitation of the Suntech acquisition." TAC at ¶ 86. In a response to an interrogatory, ITM claimed that its expenses totaled $399,407.71. *See* Elman Decl. Ex 5 at 13. This figure includes $160,000 in salaries; however, during his deposition, Mr. Schehtman confessed that these salaries were not an actual expense to ITM because ITM never paid that amount to employees. Elman Decl. Ex. 3 at 275:16-276:16.

ITM's expenses also included $36,000 in "Cash Utilized." Elman Decl. Ex. 5 at 13. When asked about that amount, Mr. Schehtman explained that it reflected expenses incurred when one "paid something . . . using an ATM . . . by cash," but could not explain what ITM spent that cash on or how the expenses were on Verint's behalf. Elman Decl. Ex. 3 at 277:15-281:14.

ITM also represented that it incurred $47,409.97 in expenses on an American Express Gold credit card used exclusively on Verint's behalf. *Id.* Ex. 5 at 17. The credit card statement includes several expenses; it is not immediately clear how many of the expenses were, as ITM claims, incurred "exclusively on Verint's behalf." For example, ITM used the credit card to pay for: gas, dry cleaning, car rentals, rental insurance, computer supplies, web hosting, phone debit cards, car washes, U-haul rentals, Sirius Radio, LinkedIn, duty free charges at Heathrow Airport, and a trip to California. Elman Decl. Ex. 38. But that's not all. ITM spent $6,336.11 at the Fontainebleau, a hotel and nightclub in Miami, Florida, $7,476.06 at Mynt, a nightclub in Miami, Florida, and thousands of dollars on a trip to Saint-Tropez, France—again, allegedly on Verint's behalf. Elman Decl. Ex. 5 at 23-27.

When asked about these expenses, Mr. Schehtman could not explain how *any* specific charge inured to Verint's benefit. *See, e.g.,* Elman Decl. Ex. 3 at 267:5-272:3. Mr. Schehtman did state, however, that he incurred some of these expenses in an effort to compete with Verint. *Id.* Ex. 4 at 405:4-15. Mr. Melnick, counsel for ITM at the time, withdrew as counsel one week after Mr. Schehtman's deposition, Dkt. No. 163. This summary only scratches the surface of ITM and Mr. Schehtman's questionable conduct. While the Court could go on, it believes that the picture it has painted provides sufficient context for the relief that Defendant seeks with the motion presently before the Court.

E. ITM Retains New Counsel and the Parties Stipulate to Withdrawal of the Quantum Meruit Claim

On January 23, 2018, James John Mahon, ITM's current counsel of record, entered a notice of appearance. Dkt. No. 158. Mr. Mahon informed the Court that, as an officer of the Court governed by Rule 11, he had reached the conclusion that the quantum meruit claim as pled in the TAC should not move forward. *See* Dkt. No. 203 at 12-13. On April 27, 2018, the parties

submitted a stipulation (the "Stipulation") providing that, "in moving for leave to amend the Third Amended Complaint, ITM will seek, and Verint will not oppose, the withdrawal of the [q]uantum [m]eruit [c]laim with prejudice." Dkt. No. 194. The Stipulation additionally provided, "[w]hether the Court grants or denies ITM's motion to amend, in whole or in part, the [q]uantum [m]eruit [c]laim shall be deemed dismissed, with prejudice." *Id.* The Court endorsed the Stipulation on the same day. ITM filed a motion for leave to file a fourth amended complaint on April 9, 2018. Dkt. No. 181.

### F. The Instant Motion

On June 8, 2018, Defendant filed the current motion (the "Motion to Renew and Motion for Inherent Sanctions"). With this motion, Verint makes two requests of the Court. First, Verint seeks to renew the Rule 11 Motion that it submitted in April of 2016 and asks the Court to impose the sanctions it previously denied in light of the information revealed through discovery. Second, Verint alleges that ITM and Mr. Schechtman have perpetrated a fraud on the court and, therefore, asks the Court to impose sanctions under its inherent authority. The Court addresses these requests in turn below.

## III. LEGAL STANDARDS

### A. *Imposing Sanctions Under the Court's Inherent Powers for Fraud on the Court*

Fraud on the court "embrace[s] only that species of fraud which does or attempts to, defile the court itself . . . so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (internal citation and quotation marks omitted). Fraud on the court occurs where "'a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's claim or defense.'" *Crown Awards, Inc. v.*

*Trophy Depot, Inc.*, No. 15 CIV 1178 (LAK) (AJP), 2017 WL 564885, at *10 (S.D.N.Y. Feb. 13, 2017) (quoting *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010)). "The essence of fraud on the court is 'when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process.'" *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010) (quoting *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002)).

To impose sanctions based on fraud on the court, "evidence of [the] unconscionable scheme must be established by clear and convincing evidence." *Scholarstic Inc. v. Stouffer*, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002); *see also Almeciga* v. *Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016) ("Such sanctions are warranted if it is established by clear and convincing evidence that [a party] has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to adjudicate the action.") (internal citation and quotation marks omitted).

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991). "In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.,* motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012). Although both findings "must be supported by a high degree of specificity in the factual findings," *Wolters Kluwer Fin. Serv., Inc. v. Scivantage,* 564 F.3d 110, 114 (2d Cir. 2009), "bad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Enmon*, 675 F.3d at 143. (internal citation and quotation marks omitted). A claim is "entirely without color when it lacks any legal or factual basis. Conversely, a claim is colorable when it has some legal and factual support, considered in

light of the reasonable beliefs of the individual making the claim." *Schlaifer Nance & Co. Inc. v. Estate of Warhol*, 194 F.3d 323, 336-37 (2d Cir. 1999).

"The Court has inherent authority 'to conduct an independent investigation in order to determine whether it has been the victim of fraud.'" *Passlogix,* 708 F. Supp. 2d at 394 (quoting *Chambers,* 501 U.S. at 44). Accordingly, it is within the Court's discretion to hold an evidentiary hearing on a sanctions motion, although no such hearing is required. *See Shah v. Eclipsys Corp.,* No. 08–CV–2528 (JFB)(WDW), 2010 U.S. Dist. LEXIS 67700, at *50–51 (E.D.N.Y. July 7, 2010) (noting that many courts have exercised their discretion to hold evidentiary hearings before imposing sanctions for fraud on the court, although such a hearing is not always necessary); *LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy*, LLC, 14-cv-9075 (JPO), 2017 WL 2414805 (S.D.N.Y. June 2, 2017) (declining to hold hearing before imposing sanctions under the court's inherent powers).

B. *Rule 11*

Federal Rule of Civil Procedure 11(b) provides, in relevant part, that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). To establish a violation of Rule 11(b)(2), it must be "patently clear that a claim

has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008). Rule 11 imposes on attorneys "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc.* v. *Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). Although, as a general matter, Rule 11 does not impose a continuing obligation on the presenter to update, correct or withdraw any pleading, written motion or other paper which, when presented, satisfies the requirements of the Rule, Rule 11 is nevertheless implicated "where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that [the claim is] groundless." *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 597 (S.D.N.Y. 2013) (internal citation and quotations omitted); *see also Galin v. Hamada*, 283 F. Supp. 3d 189, 203 (S.D.N.Y. 2017) ("Thus, the Court concludes that, once discovery closed, Galin and his counsel had an obligation under Rule 11 to withdraw the [c]omplaint because they knew—by that point if not earlier—that their allegations on the central (and dispositive) issue in the case were utterly lacking in support.) (internal citation and quotation marks omitted).

Courts maintain a high bar for establishing a Rule 11 violation given judicial concern for encouraging zealous advocacy. *E. Gluck Corp.*, 252 F.R.D. at 179 (S.D.N.Y. 2008). However, if "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Nevertheless, "[e]ven if the district court concludes that the assertion of a given claim violates Rule 11 . . . the decision whether or not to impose sanctions is a matter for the court's discretion." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-CV-885 (JPO), 2019 WL 422613, at *2 (S.D.N.Y. Feb. 4, 2019). The appropriateness of sanctions is distinct from the underlying merits of a claim. *See Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) ("When divining the point at which an argument turns from merely losing to losing and

sanctionable' courts must 'resolve all doubts in favor of the signer of the pleading.'") (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)).

## IV.   DISCUSSION

### A.   *Fraud on the Court*

The Court declines to impose sanctions under its inherent authority because Plaintiff's conduct did not impede the ability of the Court to adjudicate the issues presented in the case. Verint contends that that the allegations ITM made in support of its quantum meruit claim as articulated in the TAC "were lies, and were known by ITM to be lies at the time of the pleading." Verint's Motion for Sanctions at 28. As explained above, in the TAC, ITM alleged a claim for unjust enrichment or quantum meruit and sought to recover "the full value of ITM's services to Verint." TAC at ¶ 90. These services allegedly included "hundreds of hours of services by persons highly experienced in Brazilian business and government procurement practices." *Id.* at ¶ 86. In providing them, ITM represented that it incurred approximately $350,000 in expenses in the period after February 21, 2007—the date on which the contract between ITM and Verint expired. *Id.* at ¶ 86.

When Verint moved to dismiss the TAC, the Court inquired about the quantum meruit claim and Mr. Hinton affirmed that evidentiary support existed to support ITM's representation that it expended $350,000 on Verint's behalf after the contract between them had expired. Dkt. No. 87 at 6:1-7. Because, on a motion to dismiss, the Court was required to accept the factual allegations in the complaint as true, the quantum meruit claim—the only claim that survived Verint's motion to dismiss—proceeded. Discovery associated with this claim required substantial efforts on the part of the parties—and occupied a significant amount of the Court's time. The Court held numerous conferences to resolve discovery issues and conflicts, *see, e.g.,* Dkt. Nos. 100, 138, 140, 141, decided a motion for the issuance of letters rogatory, Dkt. No. 110, adjudicated Verint's requests for a temporary restraining order, Dkt. No. 147, and decided a motion for a preliminary injunction, Dkt.

No. 174.  In doing so, the Court expended time and resources that could have been devoted elsewhere.

The discovery material that Verint has brought to the Court's attention, which the Court described above, contradicts both the allegations ITM made in pleading its quantum meruit claim in the TAC and the representations Mr. Hinton made in defending the claim against Verint's motion to dismiss.  To state a claim for quantum meruit, a party must allege "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Hist Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).  Mr. Schehtman's deposition testimony alone whittles away the foundation of each element of ITM's quantum meruit claim.  Instead of "perform[ing] . . . services in good faith" on Verint's behalf, *Fine Hist Corp*, 418 F.3d at 175, Mr. Schehtman explained, *inter alia*, that he aided Verint's competitors and treated Verint as an enemy.  *See* Elman Decl. Ex. 4 at 375:9-376:22; 394:15-17.  He also admitted that he did not know whether the Proxies—who he previously alleged accepted ITM's services— actually worked for Verint.  *See* Elman Decl. Ex. 3 at 299:11-302:2, 304:19-307:7, 74:12-75:4.

And, of course, there is the $350,000 in expenses that ITM alleged that it incurred on Verint's behalf.  The Court initially expressed suspicion when ITM claimed that it incurred this amount for the period exclusively *after* the contractual period.  It appears that discovery has borne out the Court's initial suspicion:  ITM made a litany of charges that appear to be unrelated to any of its alleged dealings with Verint and, when questioned, Mr. Schehtman was unable to explain how any of these expenses benefitted Verint.  *See, e.g.*, Elman Decl. Ex. 3 at 267:5-272:3.

During the course of this case, ITM has forced its opponent to engage in protracted litigation.  However, the Court cannot conclude that this behavior falls within the ambit of fraud on the court.  ITM's only misrepresentation to the Court occurred when it asserted the quantum meruit

15

claim in the TAC. The Court does not understate the severity of such an action. However, "a single misrepresentation is insufficient," *Rybner v. Cannon Design, Inc.*, No. 95 Civ. 0279, 1996 WL 470668, at *3 (S.D.N.Y. Aug. 20, 1996), and conduct only enters the territory of fraud on the court if a party lies to the Court "intentionally, repeatedly, and about issues that are central to the truth-finding process." *Passlogix*, 708 F. Supp. 2d at 393; *see also Universe Antiques, Inc. v. Vareika*, 826 F. Supp. 2d 595, 611 (S.D.N.Y. 2011) (explaining that "[t]he *ongoing* submission of false statements constitutes fraud on the court because it seriously impedes the truth-finding process.") (italics added). Irrespective of any behavior they exhibited with respect to Verint, when ITM and its counsel came before the Court, they were forthcoming. After discovery and Mr. Schehtman's deposition, for example, ITM's counsel conceded that the quantum meruit claim should not proceed and stipulated to the claim's withdrawal. Additionally, the Court observes that neither ITM's memorandum of law in opposition to Verint's motion nor Mr. Schehtman's declaration in opposition challenges the veracity of the material or the underlying conduct that Verint cites. The Court cannot find that the single set of misrepresentations in the TAC—while grounds for sanctions under Rule 11—rises to the level of fraud on the Court.

Second, although adjudicating Plaintiff's quantum meruit claim required the Court to expend considerable time and effort that could have been devoted elsewhere, this does not warrant imposing the sanctions Verint requests. Fraud on the court is limited to "that species of fraud which does or attempts to, defile the court itself . . . so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *United States v. Ohle*, No. 08-CR-1109 (JSR), 2015 WL 9647534, at *1 (S.D.N.Y. Dec. 30, 2015). Although ITM and Mr. Schehtman's antics throughout this case required the Court's attention and intervention, they did not "interfere with the [Court's] ability impartially to adjudicate the action." *Scholastic, Inc. Stouffer*, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002) (citation and internal quotation

marks omitted).  Indeed, cases in which judges in this District have imposed sanctions for fraud on the court involve conduct far more serious than—as here—asserting a meritless claim in a complaint and requiring the Court to intervene in and decide motions in the discovery process.  *See, e.g.*, *Ades v. 57th St. Laser Cosmetica, LLC*, 2013 WL 2449185 at *11-12 (defendant fabricated and testified in support of evidence establishing a complete defense to one of plaintiff's theories of liability); *Scholastic, Inc.*, 221 F. Supp. 2d at 440-45 (defendant fabricated and testified in support of multiple pieces of evidence that formed the basis for her counterclaims); *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 446-60 (S.D.N.Y.2002) (plaintiff lied under oath to prevent discovery of relevant evidence and deposition of key witness, altered audio evidence, fraudulently transferred assets and feigned homelessness to bolster damages, and refused to admit wrongdoing when confronted with evidence of deceptions); *Skywark v. Isaacson*, No. 96 Civ. 2815 (JFK), 1999 WL 1489038 at *3-14 (plaintiff withheld discoverable documents and lied under oath to cover up evidence of malingering, engaged in court-supervised settlement discussions based on misleading record, and refused to admit wrongdoing when confronted with evidence of deceptions).

At bottom, "[a]s opposed to a fraud against an adverse party, a fraud upon the court will only be found where the misconduct at issue 'seriously affects the integrity of the normal process of adjudication.'"  *Sanchez v. Litzenberger,* No. 09 Civ. 7207 (THK), 2011 U.S. Dist. LEXIS 18528, at *9 (S.D.N.Y. Feb. 24, 2011) (quoting *Gleason v. Jandrucko,* 860 F.2d 556, 559 (2d Cir.1988)).  It was highly problematic for ITM to pursue its quantum meruit claim in light of the facts always known to ITM and later made evident through discovery.  Nevertheless, to the extent that ITM and Mr. Schehtman committed fraud in this case, the fraud was against their opponent—not the Court. Accordingly, Verint's motion requesting that the Court sanction ITM and Mr. Schehtman under its inherent powers is denied.

B. *Motion to Renew the Rule 11 Motion*

Verint also seeks leave to renew its Rule 11 Motion against Mr. Hinton and ITM. The Rule 11 Motion alleged that two factual allegations in the TAC were false and lacked any factual basis when they were submitted to the Court. Specifically, Verint challenged ITM's claims that it "communicated, negotiated, had meetings . . . and otherwise engaged in activity relating to the Suntech acquisition through August 2011" and that "ITM[,] with the acquiescence and direction of Verint, provided substantial services to Verint." Dkt. No. 82 at 1, 15. Second, the Rule 11 Motion sought to impose sanctions based on ITM's representation that it incurred $350,000 in expenses *after* the expiration of the contract on February 21, 2007. Dkt. No. 82 at 17. As explained above, the Court previously denied Verint's Rule 11 Motion because it "did not have sufficient information at [the] time" that it was first brought "to conclude that counsel ha[d] violated his Rule 11 obligations." Dkt. No. 92 at 12:12-14. Now, in seeking to renew the motion, Verint contends that discovery has made clear that these representations lacked any factual basis and asks the Court to impose the sanctions it previously denied.

"The time when sanctions are to be imposed rests in the discretion of the trial judge," *Chambers*, 501 U.S. at 56 n.19, and, when the Court lacks sufficient information to rule on a sanctions motion brought under Rule 11, it has long been the practice in this District to deny the motion without prejudice to later renewal. *See, e.g.*, *Wald. v. Inv. Tech. Grp., Inc.*, No. 04 CIV. 1691 (KMW) (DF), 2004 WL 2496131, at *3 (S.D.N.Y. Nov. 5, 2004) (denying defendant's motion for Rule 11 sanctions without prejudice and allowing defendant to renew the motion at the close of discovery); *Archie Comic Publications, Inc. v. Decarlo,* 2000 WL 1731341, at *1 (S.D.N.Y. Nov. 21, 2000) (noting that sanctions for allegedly frivolous pleadings "normally will be determined at the end of the litigation"); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.,* 2000 WL 528633, at *1 (S.D.N.Y. May 2, 2000) (denying request for Rule 11 sanctions before the resolution of the

suit because "collateral litigation regarding sanctions distracts the court and the parties from focusing on the merits and fosters animosity among counsel which disserves the overall objectives of the Federal Rules of Civil Procedure . . . ."); *see also Luv N' Care, Ltd. v. Shiboleth LLP*, No. 16-cv-3179 (AJN), 2017 WL 3671039, at \*13 ("Accordingly, the prevailing approach of courts faced with this situation where a defendant files a sanctions motion at the outset of a case on the ground that plaintiff's allegations are false, is to deny the motion without prejudice to renewal after discovery." ).

Mr. Hinton presents a number of arguments as to why the Court should not allow Verint to renew its Rule 11 Motion. The Court considers them in turn. Mr. Hinton first contends that, in seeking leave to renew "Defendant simply provides no new evidence or rationale for the Court to re-examine the [i]nitial [s]anctions [m]otion." Dkt. No. 238 at 7. The Court disagrees. While it does not, at this time, reach the issue of whether the material produced in discovery warrants imposing the Rule 11 sanctions that Verint seeks, it does conclude that the discovery material provides a basis for the Court to reconsider both the Rule 11 Motion and whether it was objectively unreasonable to assert the quantum meruit claim. *See Star Mark Mgmt., Inc.* v. *Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (noting that Rule 11 sanctions for pleadings are subject to an "objective unreasonableness" standard).

Mr. Hinton next argues that a motion for sanctions against withdrawn counsel "is unwarranted." *Id.* at 7. Not so. *See, e.g., Gold v. The Last Experience,* 1999 WL 156005, at \*4 (S.D.N.Y. Mar. 22, 1999) ("withdrawal does not absolve [an attorney] of liability for Rule 11 sanctions"); *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 02 CIV. 2561(KMW)(GWG), 2003 WL 22227956, at \*7 (S.D.N.Y. Sept. 26, 2003); *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04 CIV. 604 (CSH)(DFE), 2008 WL 1777855, at \*2 (S.D.N.Y. Apr. 16, 2008) ("As for defendants' contemplated claim . . . for Rule 11 sanctions, [counsel's] withdrawal from the case does not insulate him from such a claim for pre-withdrawal litigation conduct . . . . This Court will retain jurisdiction

over a Rule 11 sanctions claim if defendants decide to assert it.").

Next, Mr. Hinton contends that a party cannot seek to impose sanctions under Rule 11 if the offending claim or filing is no longer before the Court. Mr. Hinton draws the Court's attention to the Stipulation, which the parties executed on April 27, 2018. Dkt. No. 194. He argues that "a motion for sanctions filed after the dismissal of the claims subject of a Rule 11 motion must be summarily denied." Dkt. No. 238 at 8; *see also* Dkt. No. 241 at 2-4 (ITM presenting same argument). Mr. Hinton's argument fails to distinguish between the filing of a *new* motion under Rule 11 and the *renewal* of a previous motion. As such, the cases that Mr. Hinton cites in support of his argument miss the mark. *See, e.g.*, *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) (explaining that a motion for sanctions is untimely if *filed* after a point in the litigation when the lawyer sought to be sanctioned lacked the opportunity to correct or withdraw the challenged submission); *Lawrence v. Richmond Group of Conn., LLC*, 620 F.3d 153, 156-57 (2d Cir. 2010) (vacating sanctions award where district court's grant of renewed motion for Rule 11 sanctions targeted a separate submission for which for the attorney did not have an opportunity to correct or withdraw). These cases are inapposite here. Mr. Hinton submitted the TAC to the Court on March 29, 2016. Dkt. No. 73. When, on April 15, 2016, Verint filed its Rule 11 Motion, Mr. Hinton *was* counsel of record and *had* the opportunity to correct or withdraw the complaint. Accordingly, this case is distinct from the facts the Second Circuit considered in both *In re Pennie* and *Lawrence*.

Furthermore, the Stipulation, which the parties entered into more than two years after the TAC's initial submission, does not preclude the Court from imposing sanctions under Rule 11. In *Carousel Foods of America, Inc. v. Abrams & Co.*, the court denied an original sanctions motion without prejudice because the court found it premature at the time that the defendant filed it. 423 F. Supp. 2d 119, 123-124. Plaintiff, against whom sanctions were sought, did not withdraw his complaint within 21 days after the motion for sanctions was served, and therefore did not avail himself of the

"safe harbor" that Rule 11 provides. *See Adams v. New York State Educ. Dep't*, No. 08 CIV. 5996 (VM) (AJP), 2010 WL 4970011, at *7 (S.D.N.Y. Dec. 8, 2010) ("Rule 11(c)(2) provides filers with a 'safe harbor' from sanctions, in that a Rule 11(c)(2) motion . . . must not be presented to the court until the alleged violator is afforded twenty-one days to withdraw or correct the offending document.") (internal citation and quotation marks omitted). The court explained, therefore, that "[f]rom and after the 22nd day [plaintiff was] subject to Rule 11 sanctions." *Id.* Mr. Hinton did not withdraw the TAC. It follows that he was subject to Verint's Rule 11 Motion from the 22nd day after the motion was served. That the parties eventually withdrew the quantum meruit claim after years of expensive litigation does not bar the court from considering Verint's renewed motion for Rule 11 sanctions. Judges in this District have allowed parties to renew motions for sanctions under Rule 11 where the offending pleading is no longer before the Court. *See, e.g.*, *Edmonds v. Seavey*, No. 08 CIV. 5646 (HB), 2009 WL 2949757, at *8 (S.D.N.Y. Sept. 15, 2009) (permitting defendant to pursue Rule 11 sanctions on plaintiff's motion for summary judgment, which had been decided and was no longer before the court); *Greenberg v. Chrust*, 297 F. Supp. 2d 699, 702 (S.D.N.Y. 2004) (allowing defendant to renew motion for sanctions based on claims no longer before the court); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* No. 93 CIV. 6876 (LMM), 2003 WL 21355212, at *1 (S.D.N.Y. June 11, 2003) (allowing party to renew Rule 11 motion on claims that the Court had already dismissed).

As his final salvo, Mr. Hinton contends that the Court should not allow Verint to renew its Rule 11 motion because it is meritless. In support of his argument, Mr. Hinton notes that, to comply with Rule 11's certification standards, an attorney must certify "that there is (or likely will be) 'evidentiary support' for the allegation." Dkt. No. 238 at 10 (quoting *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995)). Mr. Hinton acknowledges that an attorney has a duty to conduct a pre-filing inquiry, but emphasizes that "in connection with factual contentions, 'an attorney is

entitled to rely on his or her client's statements as to the factual claims when those statements are objectively reasonable.'" *Id.* All of this is true. However, wholly absent from his memorandum of law and his accompanying declaration is any description of Mr. Hinton's pre-filing inquiry or the facts he received from his client upon which he suggests he relied. Accordingly, without these facts, the Court cannot determine whether Mr. Hinton satisfied the obligations that he cites.

ITM, for its part, offers two arguments in opposition to Verint's motion to renew its Rule 11 Motion. First, ITM contends that Verint's motion to renew is pointless because the quantum meruit claim has been dismissed with prejudice. Dkt. No. 241 at 3-4. The Court has already explained above, in addressing Mr. Hinton's opposition, why this argument is unavailing. Next, ITM claims that the Court should not allow ITM to renew its Rule 11 Motion because, after discovery closed and after reviewing Mr. Schechtman's deposition testimony, ITM withdrew the quantum meruit claim. *Id.* at 6. "In doing so," ITM argues, "ITM, by its counsel, fulfilled its own Rule 11 obligations." *Id.* On this point, the Court does not agree.

In its Rule 11 Motion, Verint alleged that ITM violated Rule 11(b)(3) by submitting the TAC, which, Verint claimed, contained "factual allegations that [were] frivolous because they lacked evidentiary support." Dkt. No. 82 at 15. Rule 11(b)(3) requires that all factual contentions asserted in a pleading "have evidentiary support or . . . will likely have evidentiary support". Fed. R. Civ. P. 11(b)(3). The Court can sanction a represented party for violating this rule. *See De Jesus-Keolamphu v. Village of Pelham Manor*, 999 F. Supp. 556, 568 (S.D.N.Y. 1998) ("Although the parties themselves are not liable under Rule 11 for frivolous legal claims, they may be sanctioned for totally meritless factual allegations.")

Here, by submitting the quantum meruit claim, ITM certified that evidentiary support existed—or would likely exist—for the factual allegations behind the claim. In opposing Verint's motion to renew, ITM argues that it complied with its Rule 11 obligations by withdrawing the claim

after discovery revealed that no evidentiary basis existed to support the allegations made in connection with the claim. However, the falsehoods and contradictions revealed in discovery that undermined the quantum meruit claim were not new revelations to ITM. To the contrary, it was Mr. Schehtman's testimony about ITM's conduct with respect to Verint that most clearly demonstrated that no factual basis existed to support the quantum meruit claim. Therefore, while ITM attempts to shield itself from sanctions under Rule 11 by claiming that it stipulated to withdraw the claim after *learning* that it was meritless through discovery, this is revisionism: ITM did not discover the falsehood of its allegations through discovery, instead, its falsehoods were discovered.

In any event, a party cannot, without a good faith basis, assert a claim, fail to undertake a reasonable inquiry into whether an evidentiary basis exists to support the allegations, and—after discovery confirms the absence of such a basis—avoid Rule 11 sanctions by withdrawing the claim. These were the facts in in *Elfoulki v. Brannons Sandwich Shop, LLC*, 14-cv-5964 (PKC), 2016 WL 3542458 (S.D.N.Y. June 22, 2016). In *Elfoulki*, plaintiff asserted claims against defendants under the Fair Labor Standards Act (the "FLSA"). In their answer, defendants stated that they were not subject to the FLSA because their gross annual revenue was less than $500,000. *Id.* at *2. Defendants also provided plaintiff with documents indicating that their gross revenue never exceeded $150,290. *Id.* After plaintiff did not drop its claim, defendants invoked Rule 11's safe harbor and served, but did not file, a notice coupled with a draft of its unfiled motion for sanctions. As here, plaintiff did not withdraw the claim during the safe harbor period, but, instead, conducted discovery. After defendants filed a motion for summary judgment and a motion for sanctions, plaintiff conceded that it could not establish the elements of its FLSA claim against defendants. The court dismissed plaintiff's FLSA claims with prejudice, but allowed defendants to pursue their motion for sanctions.

The court granted defendants' motion for sanctions. In light of the information defendants

provided regarding their gross revenue and, furthermore, the contents of the safe harbor letter, the court concluded that plaintiff could not have had a good faith basis to assert the FLSA claim if it had first undertaken an objectively reasonable inquiry. *Id.* at *4 (explaining that "[t]he conduct at issue was a failure to conduct an objectively reasonable inquiry to support an allegation."). What's more, the court concluded that plaintiff's withdrawing the claim after finding, through discovery, that no evidentiary basis existed to support the claim did not shield him from sanctions. The court explained, "if there was no objectively reasonable inquiry and no good faith basis for the allegation at the time of filing, then a party is not entitled to wait and see whether he or she might get lucky at a deposition and find some support to retroactively bless the pre-complaint inquiry." *Id* at 4.

*Elfoulki*'s reasoning applies here. The discovery material and, in particular, Mr. Schehtman's deposition testimony illustrates that ITM either did not undertake a reasonable inquiry into whether the factual allegations for the quantum meruit claim had evidentiary support before submitting the TAC, or—if it undertook the inquiry—that ITM submitted the TAC despite knowing that no such evidentiary basis existed. The Court reaches this conclusion because discovery, which ITM represents compelled it to withdraw the quantum meruit claim and stipulate to its dismissal with prejudice, did not reveal anything previously unknown to ITM. As such, ITM did not comply with its obligations under Rule 11(b)(3) and, therefore, cannot avoid Rule 11 sanctions simply because it withdrew the quantum meruit claim after discovery. While sanctions for violations of Rule 11(b)(3) may only be imposed if a particular allegation is utterly lacking in support, after reviewing the contents of discovery, the Court concludes that the sanctions Verint sought to impose on ITM are warranted.

Accordingly, Verint's motion to renew its Rule 11 Motion is granted. The Court is mindful that it must exercise "restraint and discretion" when imposing sanctions under Rule 11. *Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005). Therefore, while the Court grants

Verint's motion to renew its Rule 11 Motion, it declines to impose the sanctions that Verint seeks without allowing Mr. Hinton to present the facts upon which he allegedly relied to fulfill his obligations under Rule 11 and, furthermore, without permitting the parties to submit briefing presenting arguments regarding the nature of the sanctions to be imposed. Supplemental submissions from any party with respect to Verint's renewed Rule 11 Motion, Dkt. No. 80, are due no later than May 1, 2019. The Court declines Mr. Hinton and ITM's requests to sanction Verint for asserting the motion to renew.

## V. CONCLUSION

For the reasons herein stated, Verint's motion requesting that the Court sanction ITM and Mr. Schehtman under its inherent powers is DENIED. Verint's motion to renew its Rule 11 Motion, Dkt. No. 80, is GRANTED. Any supplemental briefing with respect to Verint's renewed motion is due no later than May 1, 2019.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 218.

SO ORDERED.

Dated: March 15, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge